IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JENNIFER RICE and ERIK WESTERVELT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION; and DOES 1-10, inclusive,<br><br>Defendant(s). | Civil Action No. 24-2647 |

**MEMORANDUM**

Plaintiffs Jennifer Rice and Erik Westervelt have sued Defendant Wells Fargo Bank, National Association ("Wells Fargo") on behalf of two putative classes of similarly situated customers. Wells Fargo moves to compel arbitration and stay the case, or alternatively, dismiss Plaintiffs' Amended Complaint. For the reasons that follow, Wells Fargo's motion to compel arbitration and stay the case will be granted.

**I.    BACKGROUND**

In their Amended Complaint, Plaintiffs—who maintain bank accounts with Wells Fargo—allege that Wells Fargo refused to reimburse them for funds that were stolen from their accounts in violation of the Electronic Funds Transfer Act and Pennsylvania law. *See* Am. Compl., ECF No. 9. Wells Fargo moves to compel arbitration of these claims—or alternatively, dismiss them—pursuant to an arbitration agreement contained within a contract (the "operative account agreement") that governs Plaintiffs' accounts. *See* Def.'s Mot., ECF No. 20; Def.'s Br., ECF No. 20-1. In opposing Wells Fargo's motion, Plaintiffs contend that the operative account agreement,

the arbitration agreement, and delegation provisions within the arbitration agreement are illusory and therefore invalid. *See* Pl.'s Opp., ECF No. 22. The relevant and undisputed facts—gleaned from the Amended Complaint and the exhibits attached to the parties' briefs—are set forth below.

On July 7, 2011, Rice and Westervelt opened joint checking and savings accounts with Wells Fargo. Hernandez Decl. Ex. A, ECF No. 20-4 ("Consumer Account Application");[1] Am. Compl. ¶ 11. In doing so, they each signed a "Consumer Account Application" affirming the following:

> I have received a copy of the applicable account agreement and privacy brochure and agree to be bound by them, including . . . any amendment or addendum . . . I also agree to the terms of the dispute resolution program described in the account agreement . . . Under this program our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.

Consumer Account Application at 6.; *see also* Rice Decl. ¶ 4 (averring that she signed the application), ECF No. 22-2; Westervelt Decl. ¶ 4 (same), ECF No. 22-3.

After Rice and Westervelt opened their accounts, Wells Fargo periodically modified the account agreement, which the account agreement permitted it to do. *See* Hernandez Decl. ¶ 4.; *see also id.* Ex. B at 52 (modification provision in original account agreement (i.e., the version in effect on July 7, 2011)).[2] The operative account agreement—that is, the version currently in effect—

---

[1] All pincites to the Declaration of Wendy Hernandez, ECF No. 20-4—including the exhibits attached thereto—refer to the ECF-imprinted pagination at the top of each page.

[2] The modification provision in the original account agreement provided, in relevant part, that "[t]he Bank may, in its sole discretion, from time to time change this Agreement by adding new provisions or by modifying or deleting existing provisions . . . When the laws governing your account requires the Bank to notify you of a modification of this Agreement, the Bank may do so by posting notice of the modification in the Bank's home page (www.wellsfargo.com), by including a message on or with the statement for your Account, or by any other means that the Bank considers appropriate, unless the laws governing your Account requires notice by a specific means . . . Your continued use of your Account or a related Service including a balance inquiry or any other communication with the Bank about your Account following the effective date of any modification of this Agreement . . . will show your consent to that modification . . ." Hernandez

provides, in relevant part, the following:

- "This . . . is your contract with Wells Fargo and constitutes the 'Agreement' that governs your account with Wells Fargo . . . This Agreement is applicable to new and existing accounts and replaces all prior agreements regarding your account, including any verbal or written statements or representations. When you sign an account application or use your account, including any account service, you and anyone else identified as an owner or authorized signer on your account consent to the terms of this Agreement. We regularly update this Agreement. You are responsible for ensuring that any authorized signer is familiar with this Agreement. If you keep your account open after we change this Agreement . . . you agree to the changes." Hernandez Decl. Ex. C, at 94, ECF No. 20-4 (hereinafter "Operative Account Agreement").

- "We may change the terms of this Agreement, including account fees and features, at any time by adding new terms or conditions, or by modifying or deleting existing ones. If we're required to notify you of a change to this Agreement, we'll describe the change and its effective date in a message within your account statement or by any other appropriate means. We may agree in writing to waive a term of this Agreement, including a fee, and we may revoke any waiver." *Id*. at 130.

The operative account agreement also contains an arbitration agreement. *See id*. at 127 ("**Arbitration Agreement between you and Wells Fargo**") (emphasis in original). The arbitration agreement provides, in relevant part, the following:

> If you have a dispute with us, we hope to resolve it as quickly and easily as possible. First, discuss your dispute with a banker. If your banker or another Wells Fargo employee is unable to resolve your dispute, you agree that either Wells Fargo or you can initiate arbitration as described in this section.
>
> **Definition:** Arbitration means an impartial third party will hear the dispute between Wells Fargo and you and provide a decision. Binding arbitration means the decision of the arbitrator is final and enforceable. A dispute is any unresolved disagreement between Wells Fargo and you. A dispute may also include a disagreement about this Arbitration Agreement's meaning, application, or enforcement.
>
> **Wells Fargo and you each agree to waive the right to a jury trial or a trial in front of a judge in court.** This Arbitration Agreement has only

---

Decl. Ex. B at 52.

> one exception: Either Wells Fargo or you may still take a dispute to small claims court.
>
> . . .
>
> **Applicable rules**
> Wells Fargo and you each agree that:
> - The American Arbitration Association (AAA) will administer each arbitration and the selection of arbitrators according to the AAA's Consumer Arbitration Rules (AAA Rules).
> - If there are any differences between the AAA Rules and this Arbitration Agreement, this Arbitration Agreement applies. If this Arbitration Agreement is in dispute, the arbitrator will decide whether it is enforceable.

*Id.* at 127 (emphases in original).

## II.  LEGAL STANDARDS

### A.  Motion to Compel Arbitration

A motion to compel arbitration is assessed under either the Rule 12(b)(6) motion to dismiss standard or the Rule 56 summary judgment standard. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773-76 (3d Cir. 2013). The Rule 12(b)(6) standard applies "where the affirmative defense of arbitrability of claims is apparent on the face of a complaint or documents relied upon in the complaint." *Id.* at 773-74 (cleaned up). By contrast, if the complaint and its supporting documents do not facially establish "that the parties agreed to arbitrate, or if the opposing party has come forth with reliable evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement," then Rule 56 applies. *Id*. at 774 (cleaned up).

In the instant case, the parties disagree as to whether the Rule 12(b)(6) or Rule 56 standard applies to Wells Fargo's motion. Wells Fargo argues that Rule 12(b)(6) should apply because the affirmative defense of arbitrability is apparent on the face of the operative account agreement—the agreement that, by its own terms, constitutes "[Plaintiffs'] contract with Wells Fargo and . . .

governs [Plaintiffs'] account[s] with Wells Fargo"—which Plaintiffs rely upon in the Amended Complaint. Operative Account Agreement at 94; Am. Compl. ¶¶ 61-65 (alleging that "[t]here existed a contract between" Wells Fargo and Plaintiffs, Plaintiffs "performed all material obligations arising under the contract," and Wells Fargo "breach[ed] . . . the contract" by "refusing to reimburse Plaintiffs . . . for the unauthorized electronic transfers from their deposit accounts."). Plaintiffs counter that Rule 56 should apply because the Amended Complaint and operative account agreement do not facially establish that a valid arbitration agreement was formed. Pls.' Opp. 6. The Court agrees with Plaintiffs and will therefore apply the Rule 56 standard.[3] In doing so, the Court gives Plaintiffs "the benefit of all reasonable doubts and inferences that may arise." *Berkelhammer v. ADP TotalSource Grp., Inc.*, 74 F.4th 115, 117 n.3 (3d Cir. 2023) (quoting *Kaneff v. Del Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009)).

B.  **Compelling Arbitration Under the Federal Arbitration Act (FAA)**

The FAA codifies the "fundamental principle that arbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "As a result, arbitration agreements are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Coinbase, Inc. v. Suski*, 602 U.S. 143, 147–48 (2024) (quoting 9 U.S.C. § 2). Once a court is "satisfied that the making of [an] agreement for arbitration . . . is not in issue," it must send the dispute to an arbitrator. 9 U.S.C. § 4. Accordingly, before compelling

---

[3] Rule 56 is also appropriate because Wells Fargo relies on evidence outside the pleadings and account agreement—more specifically, two sworn declarations by Wendy Hernandez, a "Business Execution Consultant" with Wells Fargo who is "familiar with the types of records that Wells Fargo maintains concerning its consumer checking and savings accounts"—to establish that the arbitration agreement at issue is valid. *See* Hernandez Decl., ECF No. 20-4; Hernandez Reply Decl., ECF No. 24-1; Fed. R. Civ. P. 12(d) (if "matters outside the pleadings are presented to and not excluded by the court" on a motion under Rule 12(b)(6), "the motion must be treated as one for summary judgment under Rule 56.").

arbitration, "a court must determine that (1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). Whether a valid agreement to arbitrate exists is a question of state contract law. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d. Cir. 2002).

As is true in this case, arbitration agreements often live within larger "container contracts." *See MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d. Cir. 2020). Under what is known as the "severability rule," an arbitration agreement is considered "'severable and independently enforceable from the rest of the contract in which it is contained" under the FAA. *Id.* (cleaned up) (discussing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967)); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) ("[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."). The severability rule does not apply, however, when the parties' mutual assent to the container contract is in dispute. *See MZM*, 974 F.3d at 400 ("Lack of assent to the container contract necessarily implicates the status of the arbitration agreement, when the container contract and the arbitration [agreement] depend on the same act for their legal effect.").[4]

An arbitration agreement housed within a container contract may also contain a "delegation provision"—a provision by which the parties "agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate." *Rent-A-Center,* 561 U.S. at 68 (cleaned up). Although such a provision is permissible, "courts should not assume that the parties agreed to

---

[4] Although "the formalities of contract formation also require consideration," the Court of Appeals for the Third Circuit has expressly limited claims regarding a container contract to those "that, if proven, would negate the element of mutual assent." *MZM*, 974 F.3d at 398 n.7. Accordingly, if mutual assent to an underlying container contract "is undisputed, a claim that the container contract alone lacks consideration [is] not [] enough . . ." *Id*.

arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 69 n.1 (cleaned up). However, if such evidence exists, a delegation provision is "simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 69; *see also MZM*, 974 F.3d at 399 ("Think of a delegation provision as a mini-arbitration agreement within a broader arbitration agreement within a broader contract, something akin to Russian nesting dolls.") (cleaned up). The severability rule thus applies with equal force to a delegation provision: so long as the parties mutually assented to the container contract, a delegation provision is considered severable and independently enforceable. *See MZM*, 974 F.3d at 402.

Even still, "that agreements to arbitrate are severable does not mean that they are unassailable." *Rent-A-Center*, 561 U.S. at 71. A party faced with an arbitration agreement that contains a delegation provision *and* is housed within a container contract can avoid arbitration in one of two ways: by claiming that the container contract lacked mutual assent, or by "specifically" challenging the delegation provision's validity. *MZM*, 974 F.3d at 399; *MacDonald v. CashCall, Inc*, 883 F.3d 220, 226 (3d Cir. 2018).

### III. DISCUSSION

Wells Fargo contends that (1) the arbitration agreement housed within the operative account agreement delegates disputes related to the enforceability of the arbitration agreement to an arbitrator; (2) Plaintiffs have failed to specifically challenge the validity of that delegation; and therefore, (3) Plaintiffs' challenges to the account agreement and arbitration agreement must be heard by an arbitrator. The Court addresses each argument in turn.

  **A.** **The parties clearly and unmistakably agreed to arbitrate issues related to the enforceability of the arbitration agreement.**

The Court begins by determining whether the arbitration agreement contains "clear and

unmistakable" evidence that the parties agreed to arbitrate the enforceability of the arbitration agreement. *Rent-A-Center*, 561 U.S. at 69 n.1.  The arbitration agreement provides, in relevant part:

> If you have a dispute with us, we hope to resolve it as quickly and easily as possible. First, discuss your dispute with a banker.  *If your banker or another Wells Fargo employee is unable to resolve your dispute, you agree that either Wells Fargo or you can initiate arbitration as described in this section*. . . . Arbitration means an impartial third party will hear the dispute between Wells Fargo and you and provide a decision. . . . *A dispute is any unresolved disagreement between Wells Fargo and you.  A dispute may also include a disagreement about this Arbitration Agreement's meaning, application, or enforcement.*
>
> Wells Fargo and you each agree to waive the right to a jury trial or a trial in front of a judge in court.  This Arbitration Agreement has only one exception:  Either Wells Fargo or you may still take a dispute to small claims court.
>
> . . .
>
> Wells Fargo and you each agree that . . . *[i]f this Arbitration Agreement is in dispute, the arbitrator will decide whether it is enforceable.*

Operative Account Agreement at 127 (emphases added).

The italicized language above speaks for itself: Plaintiffs and Wells Fargo each agreed that "any unresolved disagreement" concerning the "meaning, application, or enforcement" of the arbitration agreement would be decided by an arbitrator.  *Id.*; *cf. Rent-A-Center*, 561 U.S. at 71 (clear and unmistakable intent demonstrated by language giving arbitrator "exclusive authority to resolve any dispute relating to . . . the enforceability of [the arbitration agreement] including, but not limited to any claim that all or any part of [the agreement] is void or voidable."); *Coinbase*, 602 U.S. at 146 (quoting similar language that "quite clearly sends to arbitration . . . disputes about arbitrability"); *Caruso v. J&M Windows, Inc.*, 2018 WL 4579691, at *3 (E.D. Pa. Sept. 24, 2018); *Coulter v. Experian Info. Sols., Inc.*, 2021 WL 735726, at *4 (E.D. Pa. Feb. 25, 2021); *Colon v. Conchetta, Inc.*, 2017 WL 2572517, at *3 (E.D. Pa. June 14, 2017).

Plaintiffs do not dispute that the parties mutually assented to the operative account agreement within which the arbitration agreement lives.[5] As a result, unless Plaintiffs "specifically (and successfully)" challenge the delegation provisions discussed above, the Court must treat them "as a valid contract that must be enforced under the FAA." *Singh v. Uber Techs. Inc.*, 939 F.3d 210, 215 (3d Cir. 2019) (cleaned up).

B.     **Plaintiffs specifically challenge the validity of the delegation provision.**

Plaintiffs contend that a provision in the operative account agreement gives Wells Fargo an "unfettered right" to unilaterally amend the operative account agreement, arbitration agreement, and the delegation provision, rendering all three illusory and therefore invalid. Pls.' Opp. 10. Wells Fargo's position is that Plaintiffs have failed to make a sufficiently specific challenge to the delegation provision. Def.'s Reply 4-5. The Court disagrees with Wells Fargo. True, "a party seeking to avoid arbitration must [specifically] challenge the arbitration or delegation clause, not just the contract as a whole." *Coinbase,* 602 at 150–51. However, "where a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Id.* at 151. Plaintiffs' challenge applies equally to the operative account agreement, arbitration agreement, and delegation provision, so the Court must address it

---

[5] Rice and Westervelt both concede that they "signed" the original account agreement (i.e., the version that was in effect when they opened their accounts in July 2011). Rice Decl. ¶ 4; Westervelt Decl. ¶ 4. It is of no moment that they were "unaware" that the original account agreement contained (1) a provision that allowed Wells Fargo to modify its terms (and that their continued use of their accounts after the effective date of any modifications qualified as acceptance of those modifications); and (2) an arbitration agreement. *Id.* at ¶¶ 4, 6. "It is the general rule that where a party affixes [her] signature to a written instrument . . . a conclusive presumption arises that [she] read, understood and assented to its terms and [she] will not be heard to complain that [she] did not comprehend the effect of [her] act in signing." *MZM*, 974 F.3d at 403 (alteration in original) (quotation omitted); *see also Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008) ("It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.") (quoting *Upton v. Tribilcock*, 91 U.S. 45, 50 (1875)).

accordingly.

### C. Plaintiffs' challenge to the delegation provision is unsuccessful, so the Court must compel arbitration.

For the delegation provision to qualify as a valid contract under Pennsylvania law—which the parties agree applies—three things must be true: (1) the parties must have manifested an intention to be bound by its terms; (2) the terms must be sufficiently definite to be enforced; and (3) there must be consideration on both sides. *Blair*, 283 F.3d at 603. Plaintiffs' challenge pertains solely to the third: consideration.

"Consideration confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise." *Id.* (internal quotation omitted). However, if a promise "is entirely optional with the promisor, it is said to be illusory and, therefore, lacking consideration . . . The promisor has committed him/herself to nothing." *SCF Consulting, LLC v. Barrack, Rodos & Bacine*, 175 A.3d 273, 278 (Pa. 2017) (Dougherty, J., concurring) (quoting *Geisinger Clinic v. Di Cuccio*, 606 A.2d 509, 512 (Pa. Super. Ct. 1992)). A modification provision—that is, a provision that allows a party to modify a contract at some future date—"does not automatically render [an agreement] illusory." *Gutman v. Baldwin Corp.*, 2002 WL 32107938, at *4 (E.D. Pa. Nov. 22, 2002) (citing *Blair*, 283 F.3d at 604). A modification provision remains above water so long as (1) modifications can only be made in writing; (2) the modifying party must give notice of any modifications to the other party; (3) the other party has some means of accepting modifications; and (4) modifications are effective only prospectively. *See Blair*, 283 F.3d at 604; *see also Singh v. Uber Techs., Inc.*, 67 F.4th 550, 563 (3d Cir. 2023), *as amended* (May 4, 2023), *cert. denied*, 144 S. Ct. 566, 217 L. Ed. 2d 301 (2024) (approving arbitration agreement between Uber and a driver as not illusory because Uber's right to modify was conditional on conveying modifications "in writing to the

driver" and modifications became "effective only if the driver consent[e]d by continuing to use the Uber app"); *Gutman*, 2002 WL 32107938, at *4; *Bourgeois v. Nordstrom, Inc.*, 2012 WL 42917, at *4-5 (D.N.J. Jan. 9, 2012).

Plaintiffs contend that the delegation provision is illusory because a modification provision within the operative account agreement gives Wells Fargo "unlimited discretion" to unilaterally modify it, resulting in "no agreement being formed at all." Pls.' Opp. 11-12. Plaintiffs further contend that the modification provision is "exactly like" the one that rendered the arbitration agreement illusory in *Crump v. MetaSource Acquisitions, LLC*, 373 F. Supp. 540 (E.D. Pa. 2019). *Id*. at 9. Although the Court finds *Crump* a useful point of comparison, the Court disagrees with Plaintiffs on both counts.

Unlike the modification provision in *Crump*, the modification provision within the operative account agreement requires Wells Fargo to "describe" any change that could adversely affect a customer and the "effective date" of that change "in a message within [Plaintiffs'] account statement . . . or by any other appropriate means." *Compare* Operative Account Agreement at 130, *with Crump*, 373 F. Supp. 3d at 546 (provision "specifically state[d] that MetaSource need not give 'notice at any time' of any modifications."); *see also* Hernandez Reply Decl. ¶¶ 3-4 ("All updates to the [account agreement] that may adversely affect a customer are made in writing . . . in a customer's monthly statement . . . ."). And unlike the contract in *Crump*, the operative account agreement gives Plaintiffs a means of accepting or rejecting any such changes. *Compare* Operative Account Agreement at 94 ("We regularly update this Agreement . . . If you keep your account open after we change [it] . . . you agree to the changes."), *with Crump*, 373 F. Supp. 3d at 546 (contract did not have "any term providing for the employee's acceptance of modifications"). It's true that, like the contract in *Crump*, the operative account agreement does not expressly forbid

retroactive modifications. Pls.' Opp. 10-11. However, under Pennsylvania law, every contract includes an implied covenant of good faith and fair dealing—a covenant that would prohibit Wells Fargo from retroactively "chang[ing] the rules of the game" as they relate to arbitration or otherwise. *Id.* at 11; *see Kaplan v. Cablevision of PA, Inc.*, 671 A.2d 716, 721-22 (Pa. Super. Ct. 1996) (giving examples of "bad faith," including "abuse of a power to specify terms.") (internal citation omitted).[6]

The Court thus finds that the delegation provision is not illusory, and as a result, "must enforce it" by sending Plaintiffs' challenges to the arbitration agreement, operative account agreement, and original account agreement to the arbitrator. *Rent-A-Center*, 561 U.S. at 72.

## IV.   CONCLUSION

For the reasons set forth above, the Court will grant Wells Fargo's motion (ECF No. 20) to the extent it seeks to compel arbitration and stay proceedings pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). The Court will issue an Order consistent with this Memorandum Opinion.

s/ANITA B. BRODY, J.
ANITA B. BRODY
May 19, 2025

---

[6] The Court also notes that Hernandez has averred that (1) customers are given at least thirty days' notice of any modifications that could have an adverse effect; and (2) Wells Fargo only makes these modifications prospectively. Hernandez Reply Decl. ¶¶ 4-5, 7; *see also id.* Ex. D, ECF No. 24-2 (Westervelt's December 25, 2022 account statement, alerting him of a modification to the operative account agreement three months before the effective date). Plaintiffs do not challenge Hernandez's testimony, so the Court accepts it as uncontested.